UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

AARON OLIVIERI,

                           Petitioner,

          v.                                                    9:24-CV-1083
                                                                (MAD)
SUPERINTENDENT,

                           Respondent.

---

APPEARANCES:                                        OF COUNSEL:

AARON OLIVIERI
Petitioner Pro Se
24-B-0813
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

HON. LETITIA JAMES                                  JALINA J. HUDSON, ESQ.
Attorney for Respondent                             Ass't Attorney General
New York State Attorney General
The Capitol
Albany, New York 12224

MAE A. D'AGOSTINO
United States District Judge

**DECISION and ORDER**

## I.    INTRODUCTION

Petitioner Aaron Olivieri seeks federal habeas relief pursuant to 28 U.S.C. § 2254.

Dkt. No. 8, Revised Amended Petition ("Rev. Am. Pet."). Respondent filed an Answer.

Dkt. No. 12, Answer in Response; Dkt. No. 11, Memorandum of Law Supporting Response;

Dkt. No. 13, State Court Records ("SCR").[1] Petitioner did not file a Reply. For the reasons

---

[1] For the sake of clarity, citations to all parties' filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

1

which follow, the Revised Amended Petition is denied and dismissed.

## II.    RELEVANT BACKGROUND

### A. The Indictments

This case involves two Jefferson County indictments against Petitioner: Indictment No. 23-085, SCR, Dkt. No. 13 at 3-6, and Indictment No. 23-204, *id.* at 7-10. Indictment No. 23-085 includes one count of first-degree burglary, three counts of second-degree burglary, and one count of second-degree assault arising from the events of February 20, 2023. *See id.* at 3-5. Indictment No. 23-204 includes one count of second-degree assault, one count obstruction of government administration, and three counts of second-degree harassment arising from the events of April 4, 2023. *See id.* at 7-9.

### B. Pre-Plea Conference

On November 22, 2023, during a conference before the Honorable David A. Renzi, Jefferson County Court Judge, Petitioner stated the following on the record,

> I just wanted to say that I can't accept these charges, because I have mental health issues that are severe, and I wasn't on my medication, and I was hallucinating and hearing voices. And while I've been in custody of the jail, they weren't giving me my proper medication either, and they beat me several times, and they broke my face and then my nose twice. They injured my leg. They hurt my arm, and – and they threatened me. And I would like to ask if there was any way that I could be released into the custody of my mother who is my proxy.

SCR, Dkt. No. 13-1 at 2. Judge Renzi denied Petitioner's request for release, and informed Petitioner, "I'm going to let your lawyer file motions that she deems appropriate. You're claiming a mental health defense; she can do so." *Id.* at 3. Petitioner then stated, "I would also like a new lawyer," *id.*, to which Judge Renzi responded,

> You have the right to an attorney. You've been provided that. You don't have the right to come in and dictate who I give you for free. If you want to hire somebody, you have 100 percent right to do that. If you can't afford it, I will provide you with one, which I have done. If you're dissatisfied with that

2

attorney, hire your own or take a different path if you want.  But for today's purposes, the information that I have in front of me, she is doing her job and doing it appropriately and competently,

*id.* at 4.

### C. Petitioner's Guilty Plea

Petitioner's plea hearing was held on December 5, 2023, before Judge Renzi.  The agreed upon disposition for Indictment No. 23-085 was for Petitioner to plead guilty to one count of second-degree burglary and one amended count of second-degree attempted assault.  SCR, Dkt. No. 13-2 at 2.  The agreed upon disposition for Indictment No. 23-204 was for Petitioner to plead guilty to one count of second-degree assault.  *Id.*  The agreed upon sentence was three-and-a-half years in prison and five years of post-release supervision.  *Id.* at 3.

After being sworn in, Petitioner affirmed that he wished to enter guilty pleas to satisfy the pending indictments against him. SCR, Dkt. No. 13-2 at 5.  Petitioner affirmed that he discussed the above disposition with his attorney, that he understood and was satisfied with those discussions, and that he was entering the pleas with his attorney's advice and consent.  *Id.*  Petitioner asserted that he suffered from mental health issues but affirmed that he understood what was happening that day.  *Id.* at 6.  Following a brief off-the-record discussion with his attorney, Petitioner also affirmed that he was pleading guilty with full understanding of the ramifications of doing so, including waiving any mental health defense.  *Id.* at 6-7.  Petitioner affirmed that he understood he was giving up his right to have the prosecutor prove his guilt beyond a reasonable doubt in two separate jury trials, and that he was giving up his rights to test the evidence, cross-examine government witnesses, call his own witnesses, and testify at trial.  *Id.* at 7-8.

Petitioner affirmed that he was pleading guilty of his own free will and that no one had threatened him or forced him or coerced him into doing anything that day. SCR, Dkt. No. 13-2 at 9. Petitioner stated that he was told that he would receive a sentence of three-and-a-half years in prison and five years on parole for pleading guilty. *Id.* Petitioner then pled guilty to the second-degree burglary, second-degree attempted assault, and second-degree assault charges and admitted to the facts underlying the charges. *Id.* at 10-11, 15-17. At one point, Petitioner interrupted his pleas and admissions to ask, "Is there any way I could see a mental health doctor?" and stated, "I wouldn't want to have a trial. I just want my mental health to be taken care of, because I wasn't in the proper mental health state when this happened," before his attorney asked to speak with him off the record. *Id.* at 11-12.

Following the off-the-record discussion with counsel, Petitioner was sworn in again. SCR, Dkt. No. 13-2 at 13-14. Petitioner affirmed that he wanted to continue with his guilty pleas and that he was satisfied with the discussions he had with his attorney. *Id.* at 14. Petitioner again affirmed that he understood that, by pleading guilty, he was waiving his right to a jury trial and his rights to test the prosecutor's evidence, cross-examine government witnesses, call his own witnesses, testify, and present a mental health defense. *Id.* at 14-15. Petitioner again affirmed that he was pleading guilty of his own free will. *Id.* at 15. Petitioner then pled guilty to second-degree burglary, second-degree attempted assault, and second-degree assault, admitted to the underlying facts, and stated that, by pleading guilty, he would "get three and a half years plus five years' parole." *Id.* at 17.

Thereafter, Petitioner affirmed that he signed a waiver of his right to appeal, he had discussed this with his attorney, and no one had threatened or forced him into signing

4

anything that day.  SCR, Dkt. No. 13-2 at 17-18.  Petitioner affirmed that by waiving his right to appeal, he was not giving up his right to file a notice of appeal in the next thirty days, but he was giving up his right to have a higher, appellate court consider most claims of error and challenges to errors that may have occurred in Petitioner's case.  *Id.* at 18.  Petitioner affirmed that he was waiving his right to appeal after consultation with his attorney and that he was satisfied with those discussions.  *Id.* at 19.  Petitioner affirmed that he was waiving his right to appeal "in return for the plea and sentencing agreement of three and a half years in prison followed by five years of post-release supervision to run concurrent with each other." *Id.*

### D. The Sentencing Proceeding

Petitioner was sentenced by Judge Renzi on February 15, 2024, to three-and-a-half years in prison followed by five years of post-release supervision for second-degree burglary, second-degree attempted assault, and second-degree assault.  SCR, Dkt. No. 13-3 at 1-5. Judge Renzi ordered the sentence for each conviction to run concurrently with the other. *Id.* at 5.  Judge Renzi also stated that a five-year stay away order of protection would be issued, and Petitioner affirmed that he had no problem with that.  *Id.*

### III.    PRESENT PETITION

The Revised Amended Petition asserts that Petitioner is entitled to federal habeas corpus relief because (1) he was wrongfully charged, (2) his attorney provided ineffective assistance and racially profiled him, (3) the trial court ignored his concerns, denied him competent counsel, and set "excessive bail," (4) while detained pretrial, he was denied medical care, he was not given medication for an extended period, and his mental health condition was not properly treated, (5) while detained pretrial, he was also beaten, racially

profiled, and otherwise mistreated by Jefferson County correction officers, and (6) after pleading guilty, the trial court gave him "an il[l]egal sentence." Rev. Am. Pet. at 5-10. Little additional information is provided regarding the above claims. In support of the claims of racial profiling, Petitioner asserts that his attorney and correctional officers referred to him as "you guys," "minority," "your kind," and "your people." *Id.* at 8. Based on all of the foregoing, Petitioner seeks "time served or rel[ie]f of sentence." *Id.* at 15.

According to the Revised Amended Petition, Petitioner did not appeal his judgment of conviction, and he did not file any other petitions, applications, or motions concerning the judgment of conviction in any state court. Rev. Am. Pet. at 2-3. The Revised Amended Petition asserts that Petitioner "did not have the means or resources" to appeal, *id.* at 5, he "wrote letters but the courts did not receive them," *id.* at 7, he "was scared and no one would help [him] or answer [his] calls or letters," *id.* at 9, and he "was lied to [about the appellate process] and misguided" by his attorney and possibly others, *id.* at 12.

Respondent filed a memorandum of law in opposition, arguing that the Revised Amended Petition should be dismissed, and all of Petitioner's habeas claims should be denied, both because the claims have not been exhausted and because they are plainly meritless, as they were largely waived by Petitioner's guilty plea, and they fail to state a claim for relief. Dkt. No. 11 at 6-14. Petitioner did not file a reply.

## IV.    DISCUSSION

All of Petitioner's habeas claims will be denied because Petitioner never presented his claims to the state courts for direct or collateral review, and, even if he had, the claims are without merit.

**A. Standard Governing Review of a Habeas Corpus Petition**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(d)).

The AEDPA "'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). Federal habeas courts must presume that the state court's factual findings are correct "unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

**B. Petitioner's Failure to Exhaust Remedies**

As required by Section 2254, before seeking federal habeas relief, a petitioner must exhaust available state remedies, or alternatively, establish either that such remedies cannot adequately protect his rights, or that such remedies are absent. *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)). The exhaustion doctrine

recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982); *see also Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) ("Comity concerns lie at the core of the exhaustion requirement."). Although both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law. *Galdamez*, 394 F.3d at 72 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)). "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye*, 696 F.2d at 192 (footnote omitted).

The exhaustion requirement is satisfied if the federal claim has been "fairly present[ed]" to the state court. *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). A claim has been "fairly presented" if the state court was apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye*, 696 F.2d at 191. Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id.* at 192. "In order to meet the exhaustion requirement, a petitioner must have presented his claim to the state courts at least once, on direct or collateral review." *Fielding v. LeFevre*, 548 F.2d 1102, 1106 (2d Cir. 1977).

As Petitioner asserts and the record reflects, in this case, Petitioner did not appeal the judgment of conviction, and he did not file any other petitions, applications, or motions concerning the judgment of conviction in any state court. *See* Rev. Am. Pet. at 2-3. As such,

8

Petitioner did not exhaust the state remedies available to him.  Furthermore, Petitioner has neither shown an absence of available state remedies, nor shown that such remedies cannot adequately protect his rights.  Petitioner merely asserts that he "did not have the means or resources" to appeal, *id.* at 5, he "wrote letters but the courts did not receive them," *id.* at 7, he "was scared and no one would help [him] or answer [his] calls or letters," *id.* at 9, and he "was lied to and misguided" by his attorney and possibly others, *id.* at 12.  As Respondent asserts, "[n]one of this explains why [P]etitioner was able to file the instant petition in this Court but was unable to seek redress of his claims in the state courts, even after the trial court advised him at the plea proceedings that he had 30 days from the state of sentencing to file a notice of appeal."  Dkt. No. 11 at 10.

The Revised Amended Petition asserts only unexhausted claims, and the narrow exceptions to the exhaustion requirement do not apply.  Accordingly, either the Revised Amended Petition may be dismissed based on the failure to exhaust, or alternatively, Petitioner's claims may be denied on the merits, pursuant to 28 U.S.C. § 2254(b)(2). *See, e.g., Clavijo v. Wolcott*, No. 24-CV-6288, 2024 WL 2301409, at *3 (W.D.N.Y. May 21, 2024) (observing that when a petition only contains unexhausted claims, federal courts either dismiss the petition for lack of jurisdiction or deny the claims on the merits under the habeas statute).  As discussed below, the habeas claims asserted by Petitioner are without merit, and they will be denied on that basis.

### C. Petitioner's Habeas Claims Lack Merit

Petitioner's habeas claims will be denied because they are not cognizable, and they are without merit.  The Revised Amended Petition raises one sentencing-related claim and several claims arising from events that occurred prior to entry of Petitioner's guilty pleas.

*See* Rev. Am. Pet. at 5-10.  Considering the sentencing-related claim first, Petitioner asserts that an illegal sentence was imposed upon him.  *Id.* at 10.  Yet, as Respondent asserts, the record reflects that Petitioner received a sentence within the applicable statutory range. *See* Dkt. No. 11 at 14.  Petitioner's three-and-a-half-year sentence of incarceration was within the statutory range of imprisonment for second-degree burglary, as well as second-degree assault and attempted assault.  *See* Penal Law §§ 70.02(3)(b) (requiring a prison sentence between three-and-a-half and fifteen years for a class C felony), 70.02(3)(c) (requiring a prison sentence between two and seven years for a class D felony), 120.05(14) ("Assault in the second degree is a class D felony."), 140.25(2) ("Burglary in the second degree is a class C felony.").  Petitioner's five-year sentence of post-release supervision was within the statutory range of supervised release for second-degree burglary.  *See id.* § 70.45(2)(f) (requiring a term of post-release supervision between two-and-a-half and five years for a class C violent felony offense).  "It is well-settled law that a habeas petitioner's challenge to the judge's exercise of discretion in setting the length of his or her prison term does not present a cognizable constitutional issue if the sentence falls within the statutory range." *McClelland v. Kirkpatrick*, 778 F. Supp. 2d 316, 337 (W.D.N.Y. 2011).  Petitioner's challenge to his sentence does not present a cognizable constitutional issue because Petitioner's sentence was within the applicable statutory range.

Apart from Petitioner's sentencing-related claim, all claims included in the Revised Amended Petition arise from events preceding the entry of Petitioner's guilty pleas. *See* Rev. Am. Pet. at 5-10.  "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the

entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings." *United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003). As such, all remaining claims in the Revised Amended Petition are barred from habeas review by Petitioner's guilty pleas.

The record does not suggest that Petitioner intends to challenge the validity of his guilty pleas; as Respondent asserts, "[P]etitioner does not seek to withdraw his guilty plea or to otherwise vacate his conviction. Instead, he simply seeks relief from his sentence." Dkt. No. 11 at 12. Additionally, the record does not suggest any viable basis for such a challenge. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (citations omitted)). To find a guilty plea valid, the record must reflect that the criminal defendant (1) was competent to proceed and was fully aware of the nature of the charges faced; (2) had a rational and factual understanding of the proceedings; and (3) was cognizant of the constitutional protections relinquished upon entry of the plea. *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004). In short, a guilty plea must be entered knowingly, intelligently, and voluntarily.

A knowing plea is entered "'with understanding of the nature of the charge and the consequences of the plea,'" *Santobello v. New York*, 404 U.S. 257, 261 n.1 (1971) (quoting Fed. R. Crim. P. 11), and a "plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way," *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988) (citing *Brady*

*v. United States*, 397 U.S. 742, 750 (1970)).  During Petitioner's plea allocution, following several off-the-record discussions with counsel, Petitioner affirmed that he understood what was happening that day and that he was pleading guilty fully understanding the nature of the charges and the ramifications of his pleas.  SCR, Dkt. No. 13-2 at 5-17.  Petitioner affirmed that he understood the constitutional rights he was waiving by pleading guilty, including the right to have the prosecution prove the cases brought against him beyond a reasonable doubt, the right to a jury trial, the right to present a defense, and the right to testify. *Id.* at 7-8, 14-15.  Petitioner said he understood that he was waiving his right to appeal and giving up his right to challenge any errors that may have occurred in the cases brought against him with the appellate court; Petitioner acknowledged that he was doing so after consultation with his attorney and that he was satisfied with those discussions.  *Id.* at 18-19.

Petitioner's "[s]olemn declarations in open court carry a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), and such statements "are generally treated as conclusive in the face of the defendant's later attempt to contradict them," *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) (citing *United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir. 1992)).  Petitioner's under oath affirmations and statements above sufficiently establish that he understood the nature of the charges and the consequences of his guilty pleas, and that he both had, and was satisfied with, the advice of counsel.  As such, the record reflects that Petitioner's pleas were entered knowingly and intelligently.

Next, a plea "is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the [petitioner]'s will, or the [petitioner]'s sheer inability to weigh his options rationally."  *Miller*, 848 F.2d at 1320 (citing *Brady*, 397 U.S. at 750).  Petitioner's plea hearing included no threats, no physical harm, and no

mental coercion.  Petitioner stated that he was pleading guilty of his own free will, that no one had threatened, forced, or coerced him into doing anything that day.  SCR, Dkt. No. 13-2 at 9. Petitioner affirmed that he understood pleading guilty would result in a sentence of three-and-a-half years in custody and five years on parole.  *Id*.  Although Petitioner was facing a maximum term of fifteen years of incarceration for second-degree burglary, and by pleading guilty, Petitioner received the minimum prison sentence for this charge, this does not suggest that Petitioner's plea was entered into involuntarily.  *See United States v. Cruz*, 977 F.3d 732, 733-34 (2d Cir. 1992) ("Courts have long recognized that trial judges are entitled to encourage guilty pleas by imposing on a defendant who pleads guilty a lesser sentence than would have been imposed had the defendant stood trial."); *see also McMahon v. Hodges*, 382 F.3d 284, 289 n.5 (2d Cir. 2004) ("Although federal judges are prohibited from participating in plea bargaining, this blanket prohibition does not apply to state judges.").

The record also does not suggest that Petitioner's guilty plea was rendered involuntary by his mental health condition.  For a plea to be voluntary, a defendant must be competent to proceed.  *See Godinez v. Moran*, 509 U.S. 389, 396 (1993).  The federal standard for determining competency is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him."  *Godinez*, 509 U.S. at 396 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (*per curiam*)).  "It is well-established that some degree of mental illness cannot be equated with incompetence to stand trial."  *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986).  The same is true with respect to a defendant's competency to plead guilty.  *See, e.g.*, *King v. Cunningham*, 442 F. Supp. 2d 171, 185 (S.D.N.Y. 2006) ("The standard for competency to plead guilty is

13

no higher than the standard for competency to stand trial.") (citing *Godinez*, 509 U.S. at 398). "The mental illness must deprive the defendant of the ability to consult with his lawyer with a reasonable degree of rational understanding and to understand the proceedings against him rationally as well as factually." *United States v. Ioulevitch*, 508 F. App'x 73, 75 (2d Cir. 2013) (citation omitted).

During his plea allocation, Petitioner stated that he had mental health issues and expressed concerns regarding his current mental health treatment, as well as the state of his mental health at the time of the charged offenses. SCR, Dkt. No. 13-2 at 6, 11-12. Yet nothing before the Court suggests that Petitioner's mental health during the hearing either deprived Petitioner of his ability to understand the proceedings against him rationally or factually, or deprived Petitioner of his ability to consult with counsel with a reasonable degree of rational understanding. Petitioner held several off-the-record discussions with counsel, affirmed that he wanted to proceed with his pleas and not proceed to trial, further affirmed that he understood the consequences of pleading guilty, including waiving any mental health defenses, then pled guilty to the burglary and assault charges, and admitted to the facts underlying the charges. *See id.* at 7, 14-15. Accordingly, the record reflects both Petitioner's competence and voluntariness in pleading guilty.

Last, when a petitioner seeks to challenge the validity of a guilty plea entered based "on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" *Ford v. Georgia*, 498 U.S. 411, 411 (1991) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). "[A]n evaluation of ineffective assistance of counsel usually begins with an examination of the strength of the Government's case," *United States v. Helgesen*, 669 F.2d 69, 71 (2d Cir. 1982), but

14

Petitioner has pointed to no weaknesses in the cases brought against him; the record merely reflects that Petitioner admitted to the facts underlying the charges.  *See* SCR, Dkt. No. 13-2 at 15-17.  Further, as Respondent notes, Petitioner faced a maximum potential sentence of fifteen years in prison for second-degree burglary, and counsel negotiated a disposition that guaranteed Petitioner a sentence of three-and-a-half years in prison, the statutory minimum term of imprisonment.[2]  *See* Dkt. No. 11 at 14.  Absent any indication that counsel's performance was "deficient" and "that the deficient performance prejudiced the defense," *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the record reflects that defense counsel's assistance to Petitioner "was within the range of competence demanded of attorneys in criminal cases," *McMann*, 397 U.S. at 771; *see, e.g.*, *Scott v. Superintendent, Mid-Orange Corr. Fac.*, 03-CV-6383, 2006 WL 3095760, *9 (E.D.N.Y. Oct. 31, 2006) ("[W]here the defendant secured a significant strategic benefit by pleading guilty, courts are generally less likely to suspect an involuntary or misguided decision to plead.").

In sum, the record reflects (and the Revised Amended Petition does not challenge) the validity of Petitioner's guilty pleas, so all claims in the Revised Amended Petition arising from events preceding the pleas of guilty are barred from habeas review.  The only remaining sentencing-related claim is not cognizable because Petitioner's sentence was within the statutory range.  Based on the foregoing, all habeas claims raised in the Revised Amended Petition will be denied on the merits.

## V.   CONCLUSION

**WHEREFORE**, it is

---

[2] The record further reflects that, by way of the disposition, the prosecution agreed to drop seven counts, agreed to amend one count, and agreed to have the sentences for the three remaining counts run concurrently, meaning, a sentence of imprisonment exceeding fifteen years could have been imposed if Petitioner had proceeded to trial on the original indictments.

**ORDERED** that the Revised Amended Petition, Dkt. No. 8, be **DENIED and DISMISSED** in its entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[3] and it is further

**ORDERED** that any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk of the Court respectfully provide Petitioner with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk shall serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated:  April 30, 2026
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[3] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).